on the record we've had some technical difficulties in getting a police counsel patched in she is remote however we have been successful thanks to the clerk's office so we're going to continue now with the oral argument in this case 24-1 1 1 9 Richardson versus Kharbouch distress on I'll recognize you first thank you your honors my name is Tyus on I am counsel for the plaintiff appellant and please the court I will present this case yes this case is about the performance rights to a sound recording and it raises a federal question under the Copyright Act this sound recording was created by the plaintiff in 2012 when he was 16 years old and he named this sound recording hood pushing weight or HPW HPW is a unique arrangement and expression of melody and digital sounds those sounds include strings it awaits rim shots orchestra hits and kick drums to name some on October 7th 2012 plaintiff uploaded to a widely known music file sharing website called soundclick.com to promote himself as a music producer soundclick date stamp plaintiff's upload of HPW and plaintiff adopted sound clicks copyright notice to all users that all materials found on the site of the proprietary and that any use of those materials requires permission from the copyright author about seven months later on May 5th 2013 plaintiff hears HPW sampled into a popular 2013 hip-hop song called ain't worried about nothing or AWAN which is performed by the defendant appellate now sampling is when any part of a pre-existing sound recording is copied into another work and if it's done so without the permission of the sound recording owner that's infringement under the act that's according to the Sixth Circuit's analysis of the rights of sound recording owners under the Copyright Act and Bridgeport music versus dimension films according to the Sixth Circuit the Copyright Act provides the sound recording owner with the exclusive right to his entire sound recording the Sixth Circuit made particular note of and emphasized the congressional change to the act under section 114 to include that operative term entire when defining the extent of the sound recording owners right to his sound recording the Sixth Circuit interpreted the act to by his terms preclude a substantial similarity test for infringement between the infringing work if we accept judge Maldonado's position that there when she hears it and she said you know what based on the evidence could have been might have been but it because we're here on a motion for summary judgment for sampling what evidence did we have that would support the representation you're making to us this afternoon that this particular sound was sampled into the song well firstly let's be a threshold of sampling and infringement was analyzed in the Sixth Circuit and according to the Sixth Circuit the sound recording owner has the right to his entire sound recording which means there's no need for a finding of whether AWAN is a substantial sampling of HPW what evidence do we have that there is a sampling in this case the evidence is the plaintiff who created HPW he specifically described describes with particularity the sounds of HPW which he hears in a I understand his allegation but is there any evidence that substantiates that allegation or his belief that it that's his that that is the actual sound recording your honor again going back to the Sixth Circuit the threshold is very low it's only it only requires any amount of sampling and that's infringement if I may yes if I may I I see it as two two options here either cowboats sampled meaning out and out took the sound and copied the sound kind of cut and paste of the sound or the musical composition copyright which is a separate category carboosh created the music that sounds just like what mr. Richardson created so rather than copying a recording cut and paste of a recording so to speak listen to what mr. Richardson did and then sat down and recreated the notes and created the sound and so I I I have the same question that Judge Pryor is asking given those two scenarios what evidence is in the record that it's the first one that he actually copied the sound versus sat down and reproduced on his own the musical composition well that scenario that the you've just described that's limited that's not describing what the Sixth Circuit described in Bridgeport music where it says that it's cited to a law journal to explain that sampling for one thing is extremely common in hip-hop so for a hip-hop artist to sit down and imitate or simulate another artist that's not what happens in the industry the Sixth Circuit cited to a law journal and the words of the court is that sampling in hip-hop is extremely common those the words of the court is cited to a law journal to explain why sampling is extremely common in hip-hop it's because it saves time and it saves money to just take music samples from another artist who's already done work and technology makes it easy as for the the melody we have an expert who charted out both works and scores and determined that AWAN copies six out of the seven motives those are the musical ideas expressed in HPW. AWAN copies six out of the seven motives. Did the expert say and so therefore it was sampled or therefore it was copied? The expert stated that the melody was misappropriated and the standard laid out by this court in Atari Inc. versus North American Phillips Consumer Electronics and again in Wildlife Express Court versus Carroll Wright Sales is whether an ordinary reasonable person not an expert whether an ordinary reasonable person will conclude that the plaintiff's work has been misappropriated and again given the low threshold for infringement in cases of sound recordings that finding could be made just by listening to the two works it doesn't require an expert although we did have an expert and the expert stated that it does copy the melody and that melody is probative of sampling because even though the melody is an unprotected element of the sound recording is still probative that AWAN was sampled from HPW because this court has said in design basics versus signature construction that the inquiry into copying is not restricted to just the protected elements of the work but it includes the unprotected elements as well. On that point I'm glad you brought up design basics because it's important. Does design basics map on to the sound infringement copyright or if it does how does it do so? Well because it is generally states that when determining whether there's copying you're not restricted just the protected elements you can look at whether you find similarities that you would not expect to find had the two works been created independently of each other and to the point that AWAN was never created independently of HPW the expert states that the commercial success of AWAN is owed to the originality of the musical ideas and motives expressed in HPW because it is the originality of musical ideas and motives expressed in a song that is key to that song's success and popularity among fans. Did you take any depositions where you asked how Mr. Carbosha's producers created the song or asked whether they relied on sampling for this particular song? No but the district court noted that the plaintiff already spoke with the alleged producer of AWAN and could not show that it was proven by speaking with the director. Also this court has stated in JCW investments that direct evidence of infringement is hard to come by in these cases. These cases are typically proven by circumstantial evidence which we have plenty of. Would you like to reserve the remainder of your time for rebuttal? No your honor I'll continue. That's fine thank you. So we believe that a preponderance of all this evidence shows that AWAN is sampled from HPW which means the AWAN is a derivative of HPW which means the plaintiff owns the copyrights to AWAN as it is a derivative work of HPW under section 1062 of the Act. The defendant has no copyright to AWAN even though he added lyrics and vocals to the song because section 103A of the Act says there is no copyright to work which has employs pre-existing work which has been loosed unlawfully as it has been here. Only the plaintiff has the right to perform AWAN by digital audio transmissions such as under section 1066 of the Act such as through YouTube, such as through the Apple Music website, such as through various interactive services which have been licensed out by ASCAP, that major performing rights society, such as through all of these means through which the defendant has been unlawfully willfully infringing and thieving the plaintiff's performance rights for more than a decade. This court said in Wildlife Express Court that willful infringement can be found where the defendant has ignored the plaintiff's notices of copyright where the district court noted that this is not a case lacking notice of plaintiff's copyright that the defendant himself acknowledged that on May 5th 2013 that the plaintiff contacted and confronted the defendant on Twitter to demand credit for his work. The plaintiff even provided the defendant with a link to HPW on SoundClick.com where it is date-stamped six months before the release of AWAN and where it can be heard. Thank you Mr. Hassan, thank you very much. We'll now move to argument from the appellee, Ms. Martirosian. Thank you, your honors. Good morning and may it please the court, my name is Ani Martirosian, attorney for Appelli Kareem Karboosh aka French Montana. Your honors, Appelli respectfully requests this court to affirm the district court's finding that appellant has failed to show actual copying of the sound recording in Hood Pushing Weight in Appelli's song Ain't Worried About Nothing. Specifically, your honors, 17 U.S.C. Code section 114B states that the exclusive rights of the owner of a copyrighted sound recording under clauses 1 and 2 of section 106 which are specifically to produce the copyrighted work in copies or phonorecords and to prepare derivative works based upon the copyrighted work do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds even though such sounds imitate or simulate those in a copyrighted sound recording. Your honors, the statute is clear. Whenever there is a copyright registration or copyright in a sound recording, unless they're actual copying of the sound recording itself, there is no copyright infringement of the sound recording itself. And as Mr. Hassan was explaining and I would like to discuss both Design Basics and the Sixth Circuit Court, in Appellant's brief, it is argued that the incorrect standard is applied to make a determination whether or not there is any kind of copying in a sound recording. And Design Basics v. Signature Construction Inc., which is a Seventh Circuit decision, it states that for any copyright infringement claim, first there must be an ownership and a valid copyright, and second, the copying of a constituent element of copying work that is original. Design Basics, Judge Brenner, I would like to speak to your question. Design Basics does set up the general framework of what copyright infringement generally is. However, because the specific copyright in this instance is a sound recording, and the protection extends only to the recording itself, unless a portion of that recording is in any way misappropriated by taking a portion of it, which would be considered sampling, or taking its entirety, there cannot be any copyright infringement in the sound recording, of that specific sound recording. And Appellant does argue that the Sixth Circuit states that any kind of, that the threshold essentially for copyright infringement in a sound recording is very low, and that is And as identified in Design Basics, the two prongs for finding whether or not there was any copying, the first assertion is, was there actual copying that had occurred? And then once actual copying is established, then it moves to make a determination whether or not the copying goes so far as to constitute improper appropriation. The Sixth Circuit generally, in Bridgeport Music, does apply that standard. And when it made a decision whether or not there was copyright infringement of a sound recording, the first question it asked was, was there actual copying? Was there sampling? And the answer was yes. And in the Sixth Circuit, the court found that regardless of what amount of the sound recording is taken, it doesn't matter how much is misappropriated, it is considered copyright infringement in the sound recording. But as an initial threshold matter, it asked the question In the instant case, there is no evidence of actual sampling or copying of the sound recording itself. The evidence that is in the record is that six of the seven motifs are copied, which is opined by the expert of appellant, that six of the seven motifs, which are melodies, and are not protected by a copyright in a sound recording. Things such as the snare, the 808, the hi-hat, rimshot, cymbal, low brass, piano bells, and other elements. And specifically, those on its own are not protected by the registration in the sound recording itself. In other words, the record is devoid to show that any sampling has occurred, which means that there is no actual copying of the sound recording. What is your response to Mr. Richardson's argument that sampling is so common in hip-hop that we should and could infer that it happened here when you marry that fact with what the expert found, and really what an untrained ear can hear when you listen to the two recordings about how similar they sound? Yes, Your Honor. Two songs can sound very, very similar, practically identical. Circular 56 of the Copyright Office brings a great example that a song performed by Adele, Rolling in the Deep and Recorded, and one performed by Aretha Franklin and Recorded are two separate works in a sound recording. And they do not implicate one another, regardless of how similar they sound of each other's sound recording rights. Now, as to how common it is sampling in the hip-hop industry, specifically speaking to the Sixth Circuit, when the Sixth Circuit made a determination that it doesn't matter how much of the sound recording is taken, it is considered infringement if any portion is taken, it's because it is so common. But as an initial threshold, it did make a determination as to whether there was any actual copying of the sound recording. Was the right in any way misappropriated? And further, the Eastern District of Louisiana did address this question of how common it is in the hip-hop industry, specifically in the case of Batiste versus Lewis. And in specifically that case, the plaintiff on summary judgment brought evidence that it is common in the hip-hop industry and that Lewis and Macklemore specifically had sampled previously to show that they had sampled in this instance. And the court found that that is not sufficient basis to find that there was sampling without anything additional, without any additional admissible evidence of actual sampling and misappropriation of the that the district court erred in not taking into consideration the statement submitted as part of the summary judgment as admissions by a defendant because defendant or and neither plaintiff for that matter did address the statement of uncontroverted fact. However, even though it's up to the discretion of the court, none of the facts identified in the brief by appellant are dispositive to show whether or not any portion of the underlying sound recording was misappropriated by appellee. And so it wouldn't, it would not be dispositive. And lastly, appellant does request for injunctive relief on appeal, which at least as a threshold matter, it must show, it must succeed on the merits and an appellant has not succeeded on the merits to show that there was any copyright infringement to justify a permanent, a request for permanent injunction on appeal. Thank you, Ms. March-Rosian. Thank you, Mr. Hassan. The case will be taken under revisement. And I appreciate everyone's patience today. Thank you. Thank you, your honors.